## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| KEVIN HARRISON,<br>　　　Plaintiff,<br><br>v.<br><br>TEAM PRECISION AUTO, LLC;<br>PRECISION CHRYSLER JEEP DODGE<br>RAM; ZBIGNIEW ZAWISTOWSKI;<br>JOHN/JANE DOES 1-10, AND XYZ<br>CORP. 1-10,(Said names being fictitious),<br><br>　　　Defendants. | :<br>:<br>:<br>:<br>: Civil Action No.:<br>:<br>:<br>:<br>:<br>:<br>: **COMPLAINT**<br>:<br>: |

Plaintiff, Kevin Harrison, by and through his attorney, Patrick J. Whalen, Esquire, by way of Complaint against the Defendants, states:

### PARTIES

1.　　Plaintiff, Kevin Harrison, an individual, resides in Sussex, Sussex County, New Jersey. For much of the time pertinent to the allegations in this Complaint, Plaintiff was employed by Defendants Team Precision Auto, LLC and Precision Chrysler Jeep Dodge Ram ("Defendants" or "Team Precision") as an Auto Technician in their Parts and Service Department.

2.　　Defendant Team Precision is a New Jersey Corporation located at 1341 Route 23 South, Butler, New Jersey. Team Precision is a full-service car dealership, which, in addition to the sale of new and used vehicles, also operates a Parts & Service Department, which is where Plaintiff Kevin worked as an Auto Technican.

3.　　Defendant Zbigniew Zawistowski was the majority owner of Defendant Team Precision and directly engaged in the retaliation against the Plaintiff and the one who unlawfully terminated the Plaintiff's employment after he disclosed, objected to and complained about wage and hour violations and unsafe workplace conditions.

1

4. Defendants Team Precision and Zawistowski are and were an "employer" within the meaning of N.J.S.A. §34:11-56a1.

5. Upon information and belief, at all relevant times, Defendant Team Precision was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA.

6. Upon information and belief, for each of the three years preceding the filing of the initial Complaint herein, Defendants have employed two or more individuals "handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce."

7. Defendants John/Jane Does (1-10) and XYZ Corporations (1-10) are presently unidentified individuals and/or entities who were involved in the wrongful employment termination of Plaintiff and who otherwise sanctioned and condoned the retaliation, hostility and other misconduct Defendants engaged in and directed toward the Plaintiff and/or who had managerial responsibility and supervisory responsibilities over the Plaintiff such that they knew or should have known and could have prevented the misconduct described below. Plaintiff reserves the right to amend the Complaint to include these unknown individuals/entities should their identity be revealed in further discovery.

## JURISDICTION AND VENUE

8. Jurisdiction and venue in this action are predicated upon 29 U.S.C. §§206(b) and 207(b) of the Fair Labor Standards Act ("FLSA"), 28 U.S.C. §1331 and by 28 U.S.C. §1337, as this action arises under the laws of the United States and Acts of Congress regulating commerce. Jurisdiction over Plaintiff's claims for declaratory relief is conferred by 28 U.S.C. §§2201 and 2202. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

9. *In personam* jurisdiction in this action is also predicated upon business activities and transactions conducted throughout both Morris and Sussex County, within the District of New Jersey. The means and instrumentalities of interstate commerce were used and employed in connection with the wrongful conduct hereinafter alleged.

10. Venue is proper, pursuant to 28 U.S.C. §1391, in this District pursuant to the FLSA, because certain of the transactions, acts, practices, and courses of conduct constituting violations of FLSA occurred within this District.

**RELIEF SOUGHT**

11. This action seeks money damages, punitive and exemplary damages, attorney's fees, costs, and injunctive relief.

### I. INTRODUCTION AND FACTUAL BACKGROUND

#### (a) Employment at Team Precision

12. Kevin Harrison was employed as an Auto Technician at Team Precision for approximately 3 years. Throughout the course of his employment, Plaintiff was an excellent Mechanic and a dedicated employee. Plaintiff held the position of Certified Master Automotive Technician. Kevin was/is a highly trained qualified Chrysler Technician. He was one of Team Precision's lead Auto Technicians.

13. Plaintiff's typical weekly work schedule, when he was on site and on duty, was Monday through Friday, 7:30 a.m. through 4:30 p.m. The normal start time was supposed to be 8:00 a.m., however, Plaintiff's Manager constantly pressured Plaintiff to arrive early. There was a time clock that tracked employee hours during his entire tenure.

14. During his tenure, Plaintiff had an excellent reputation and performance record. Given his experience and knowledge, and the fact that, again, he is a Certified Master Automotive Technician, he was one of the main "go-to" Auto Technicians in the Service Department.

15. Throughout the term of his employment with the Defendants, Plaintiff was consistently told that he was highly valued and that his performance exceeded expectations.

### (b) Plaintiff's Whistleblowing Activity

16. Over the last several years, Defendants have been insisting that employees, including the Plaintiff, in the Service Department, work Overtime. Defendants have engaged in a campaign of pressure to force the employees in the Service Department, including the Plaintiff, to come in early, stay late and work on Saturdays.

17. Plaintiff, and other similarly situated employees[1], were being forced to work in excess of 40 hours per week, with no payment of Overtime by the Defendants.

18. Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§201, *et seq.*, and the New Jersey State Wage and Hour Law, that he is entitled to recover from Defendants: (1) unpaid overtime, (2) liquidated damages, and (3) attorney's fees and costs.

19. Early on, and persistently right up through his wrongful termination, Plaintiff disclosed, objected to and complained about the fact that the Defendants were unethically and unlawfully failing to pay Overtime and otherwise not complying with pertinent Wage and Hour Laws. Plaintiff literally complained and objected close to one hundred times during his employment about these violations and illegal practices.

20. Plaintiff also consistently told Defendants' Management Team, including Defendant Zawistowski, that he had no problem working extra hours, as long as they paid him for those hours.

---

[1] Plaintiff reserves the right to amend this Complaint and pursue a collective action on behalf of similarly situated employees from the Service Department, following further investigation and discovery.

4

21. The work environment grew increasingly hostile and dysfunctional as Plaintiff and other employees objected and/or refused to work Overtime, while, simultaneously, Defendant Zawistowski berated and pressured his Management Team to force the employees in the Service Department to work Overtime.

22. Defendant Zawistowski, on a daily basis, would actually scream at his Manager, Chuck Pangione, to force the Service staff to sign up for and work overtime.

23. Plaintiff and others complained about not getting paid for the Overtime, and, in response, defendants would threaten them with the loss of their jobs.

24. Upon information and belief, several other employees were also fired in retaliation for objecting to not getting paid for Overtime and/or for refusing to work Overtime for free.

25. The situation spiraled further out of control over the last year and a half as Defendants started to undercut Technician's stated hours for given auto repair jobs. This resulted in more wage and hour violations.

26. By way of background, Plaintiff and other Technicians are paid, in part, a flat rate for a specific auto repair job.

27. N.J.A.C. 12:56-20.3 allows an exemption for Overtime for Skilled Mechanics as long as the employer pays that Skilled Mechanic a "flat rate" and **guarantees a "basic contractual hourly rate", separate and exclusive from the flat rate.** N.J.A.C. 12:56-20.3 and N.J.S.A. 34:11-56a4) require that that **"basic contractual hourly rate" must include payment of time and one half of the hourly rate for all hours actually worked in excess of 40 hours per week.** This is precisely one of the laws the Defendants are violating.

28. Plaintiff Kevin Harrison, and other similarly situated employees from the Service Department, have been actually working far in excess of 40 hours per week, but the Defendants are not paying them time and one half at any "basic contractual hourly rate".

29. By way of further illustration of the Defendants' systematic violations of these Wage and Hour laws, when Plaintiff worked on Saturdays, he would receive two separate paychecks from the Defendants.

30. In an effort to disguise the fact that they were not paying legally required Overtime, Defendants would cut a separate check for the hours Plaintiff worked on Saturday, and refer to it as the "SAT Bonus Service Check".

31. The Hours section on the check falsely states that the employee worked zero hours.

32. In actuality, when Plaintiff worked Saturdays (which was about 1 to 2 times per month), he worked from 7:30 a.m. through 3:00 p.m.

33. Defendants are also violating N.J.A.C. 12:56-20.1(b) by utilizing flat pay rates for their employees when they handle "minor tasks", including brake service, oil changes, and tire changes. The law expressly states that the Skilled Mechanic exemption does not pertain to or include such "minor tasks".

34. Finally, N.J.A.C. 12:56-1.7 explicitly prohibits an employer from discharging or discriminating against an employee making complaints about these wage and hour issues.

35. Defendants' violations were deliberate, numerous and systematic.

36. When Plaintiff or other similarly situated employees would complain or object, they would be threatened with the loss of their job.

37. One time, when Plaintiff discussed the problem directly with Defendant Zawistowski, Defendant Zawistowski screamed at him: *"Are you fucking crazy"*, mockingly laughed at the Plaintiff, and just walked away.

38. At some point in 2016, Defendants started forcing the Service Department employees, including the Plaintiff, to fill out an Overtime weekly sheet. The intent appears to have been to compel them to commit, first thing every Monday morning, to working Overtime for which they would not be paid.

39. Plaintiff Kevin Harrison's status as the "go-to" Auto Technician meant he was frequently pulled off tasks to assist other less experienced Technicians, and also called to assist on more difficult and complicated jobs. There was no flat rate set for the constant spot assignments he was expected to, and did, handle. Likewise, given his status, he was essentially "on call" the entire time he was on duty and on site at the dealership.

40. Plaintiff's complaints and objections were all essentially ignored.

41. On a fairly frequent basis, Service Manager Chuck Pangione would assure Plaintiff: *"Don't worry Kevin, I'm going to take care of you."*

42. Clearly, Mr. Harrison's concerns were in fact reasonable and well grounded.

43. In addition to his complaints and objections regarding wage and hour violations, Plaintiff objected to other unlawful and unethical conduct in the workplace.

44. Because of Plaintiff's skills and level of expertise, Defendant Zawistowski had the Service Manager arrange for Kevin to repair the Defendant's personal heavy duty freight-liner truck.

45. This is an oversized commercial truck which would normally not be worked on at the Team Precision Auto shop. Indeed, the shop was not equipped with the special tools required for safely checking fuel pressure and compression on that vehicle.

7

46. In fact, the Precision Auto facility at Butler, New Jersey was not designed for Technicians to safely work on commercial trucks.

47. Plaintiff performed an initial check over the truck and found that it had excessive engine blow by and a misfire.

48. Plaintiff knew that to diagnose the internal engine issues further, he would need special tools.

49. Plaintiff, upon recognizing these safety issues, immediately explained same to the Service Manager. Plaintiff advised that he could not safely work on the diesel fuel system on Defendant's truck without those special tools.

50. The Service Manager did not disagree, he also knew there were real safety issues. He promised to speak with Defendant Zawistowski and arrange for the tools to be purchased so that the work could be performed safely.

51. Defendant Zawistowski refused to purchase the tools; he wanted his truck fixed regardless of the safety problems.

52. Plaintiff refused to do the work under such unsafe conditions. He stressed to the Defendants that diesel fuel pressure can kill a Mechanic if not handled properly.

53. As a result, Defendant's truck sat in the service parking lot for about 4 months.

54. Defendant Zawistowski was extremely upset with the Plaintiff over this.

### (c) Retaliation Against The Plaintiff

55. In early February, 2017, Defendant Zawistowksi held a meeting with Plaintiff and the Service Manager in his office. The original purpose of this meeting was to address the fact that Plaintiff had not performed the work on his personal truck as a result of safety concerns.

56. That meeting, as a result of Defendant Zawistowski's irrational and hostile behavior, quickly spiraled out of control.

57. Defendant initially yelled at Plaintiff calling him "crazy" because of the safety concerns he was raising. Defendant kept insisting that he perform the work on his personal truck, despite the missing special tools and safety risks.

58. Then Defendant Zawistowksi started yelling at Plaintiff about his refusal to sign up on the weekly Overtime sheets and ridiculed Plaintiff for insisting on being paid Overtime.

59. Plaintiff once again explained that he was willing to work the extra hours, as long as he was properly paid Overtime for same.

60. Defendant then exploded at Plaintiff: ***"You don't like it, then get out, you're fired!"***

61. That was Plaintiff's last day of work. Although the Service Manager subsequently approached Plaintiff and promised him things "would cool over" and they would call Kevin back to work, that never happened.

62. At the time of Plaintiff's termination, he was 41 years old. He has two young sons, Luke and Mason (ages 5 and 7).

63. The timing of Defendants' termination of Plaintiff's employment illustrates the retaliatory and unlawful nature of Defendants' actions.

64. It would appear that, in direct retaliation against Kevin Harrison, as a result of his efforts to assert his legal rights -- in particular, his complaints concerning and objections to unsafe work conditions and wage and hour violations, Defendants threatened, harassed, retaliated against him, and ultimately unlawfully terminated Plaintiff's employment.

### (d) Plaintiff's Allegations As To The Violations of The FLSA and New Jersey Wage and Hour Law.

65. At all relevant times, Defendants knowingly and willingly failed to pay Plaintiff his lawfully earned overtime wages in direct contravention of the FLSA and the New Jersey State Wage and Hour Law.

66. Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

67. Defendants knowingly and willfully operated their business with a policy of not paying either the FLSA overtime rate of (time and one-half) or the New Jersey State Wage and Hour Law rate of (time and one-half) to the Plaintiff and other similarly situated employees.

68. Plaintiff, Kevin Harrison, retained Patrick J. Whalen, Esquire to represent him in this litigation and has agreed to pay the firm a reasonable fee for its services.

69. Throughout his employment, Plaintiff was not fully and adequately compensated for hours worked in excess of 40 hours in a given week. This specifically includes all Saturdays for which, instead of being paid Overtime, he was paid a "SAT Bonus – Service Tech" (whatever that is). This constituted a failure on the part of the Defendants to pay wages as required by law.

70. In addition to simply refusing to pay legally mandated Overtime, Defendants have also failed to fully and adequately compensate Plaintiff by (a) improperly utilizing flat rates for minor projects that are not within the scope of the Skilled Mechanic exemption; and (b) by systematically undercutting the hours used in their flat rate system for other non-minor tasks. These violations are set forth and explained in more detail above.

71. Even when Plaintiff and other Service Department employees raised concerns and complaints regarding these wage and hour violations, Defendants still refused to fully and adequately compensate Plaintiff and other similarly situated employees.

72. During his period of employment, the work performed by Plaintiff was directly essential to the business operated by Defendants.

73. At all relevant times, Defendants knowingly and willfully failed to pay Plaintiff his lawfully earned wages, including Overtime wages, in direct contravention of the FLSA and New Jersey Wage and Hour Law.

74. Defendants knowingly and willfully operated their business with a policy of not paying wages as required by the FLSA and New Jersey Wage and Hour Law to the Plaintiff and other similarly situated employees.

## FIRST COUNT
### (Violation of the New Jersey Conscientious Employee Protection Act)

75. Plaintiff repeats and restates each and every allegation contained in the foregoing Paragraphs as if set forth herein.

76. Plaintiff's unlawful employment termination, described above, was merely the culmination of a pattern of hostility Defendants exhibited toward Plaintiff. Defendants directed this hostility toward Plaintiff because he disclosed and objected to practices of his employer that he believed were in violation of law and/or public policy, unethical and/or criminal.

77. Plaintiff's objection to the unlawful conduct outlined above ultimately led to his wrongful employment termination.

78. By terminating Mr. Harrison's employment after he complained and objected to the unlawful and/or unethical conduct described above, Defendants violated the Conscientious Employee Protection Act, N.J.S.A. §34:19-1, *et seq.*

79. By terminating Kevin Harrison's employment after he objected to an activity, policy or practice he reasonably believed was in violation of a law, rule or regulation, and/or was unethical, Defendants violated the Conscientious Employment Protection Act, N.J.S.A. §34:19-1, *et seq.*

80. As a result of having been discharged by Defendants, Plaintiff has suffered significant economic loss; physical and emotional stress; pain and suffering; severe emotional distress; psychological damage; embarrassment; and adverse effects upon his daily, personal and social life. Defendants' misconduct also has had a detrimental impact upon Plaintiff's employment efforts and status.

## SECOND COUNT
### (Termination in Violation of Public Policy)

81. Plaintiff repeats and restates each and every allegation contained in the foregoing Paragraphs as if set forth herein.

82. Defendants wrongfully terminated Plaintiff's employment. Plaintiff's employment termination was a direct result of his objections to actions and conduct he reasonably believed were in violation of a law, rule or regulation, and/or was unethical. As a result, his employment termination was a direct violation of clear, mandated public policy within this State.

83. As a result of having been discharged by Defendants, Plaintiff has suffered significant economic loss; physical and emotional stress; pain and suffering; severe emotional distress; psychological damage; embarrassment; and adverse effects upon his daily, personal and social life. Defendants' misconduct also has had a detrimental impact upon Plaintiff's employment efforts and status.

## THIRD COUNT
## VIOLATION OF THE FAIR LABOR STANDARDS ACT

84. Plaintiff repeats and restates each and every allegation contained in the foregoing Paragraphs as if set forth herein.

85. At all relevant times, upon information and belief, Defendants were and continue to be, employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of FLSA, 29 U.S.C. §§ 206(a) and 207(a).

86. At all relevant times, Defendants employed Plaintiff within the meaning of the FLSA.

87. During each of the last three years, the Team Precision Defendants had gross revenues in excess of $500,000.00.

88. 32. At all relevant times, the Defendants had a policy and practice of refusing to pay overtime compensation at the statutory rate of time and one-half to Plaintiff for his hours worked in excess of forty hours per work week.

89. Plaintiff is a covered individual within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

90. Upon information and belief, Defendants regularly engaged Plaintiffs to work more than forty hours in a week without paying him the overtime premium pay as required by the FLSA.

91. Plaintiff regularly worked more than forty hours per week for Defendants.

92. Defendants failed to pay Plaintiff overtime compensation at the rate of time and one half for all hours worked over forty in a week as required under the FLSA.

93. Defendants' failure to pay Plaintiff the proper wages required under the FLSA was willful.

94. All actions and omissions described in this Complaint were made by Defendants directly or through its supervisory employees and agents.

95. Defendants failed to pay premium overtime wages to Plaintiff in violation of the FLSA, 29 U.S.C. §203, 207, and its implementing regulations.

96. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs at the statutory rate of time and one-half for their hours worked in excess of forty (40) hours per week when Defendants knew or should have known such was due.

97. Records, if any, concerning the number of hours worked by Plaintiff and the actual compensation paid to Plaintiff are in the possession and custody of the Defendants. Plaintiffs intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

98. Defendants failed to properly disclose or apprise Plaintiff of his rights under the FLSA.

99. Defendants' failure to comply with the FLSA caused Plaintiff to suffer loss of wages and interest thereon.

100. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff is entitled to liquidated damages pursuant to FLSA

101. Due to the intentional, willful and unlawful acts of Defendants, Plaintiff suffered damages in an amount not presently ascertainable of unpaid overtime wages, plus an equal amount as liquidated damages.

102. Plaintiff is entitled to an award of their reasonable attorney's fees and costs pursuant to 29 U.S.C. §216(b).

## FOURTH COUNT
### (Violations of the New Jersey Wage and Hour Law)

103. Plaintiff repeats and restates each and every allegation contained in the foregoing Paragraphs as if set forth herein.

104. Unless there is an exception to the protection afforded by N.J.S.A. §34:11-56a-56a30, all employees are entitled to overtime pay for hours worked in excess of forty hours per week pursuant to N.J.S.A. §34:11-56a-56a30.

105. Plaintiff Kevin Harrison was not exempt from the requirement of overtime premium pay.

106. No exemptions under N.J.S.A. §34:11-56a-56a30 are applicable to Plaintiff and therefore, Plaintiff demands to be compensated for every hour of overtime worked in excess of forty hours per week at any time during the three years preceding the filing of this Complaint, as well as attorney's fees, costs, and prejudgment interest.

107. Defendants willfully violated Plaintiff's rights by failing to pay Plaintiff overtime compensation at rates not less than one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

108. Due to the Defendants' New Jersey State Wage and Hour Law violations, Plaintiff is entitled to recover from Defendants his unpaid overtime, liquidated damages, damages for unreasonably delayed payments, reasonable attorney's fees and costs and disbursements of this action.

## FIFTH COUNT
## (Retaliation Under FLSA, New Jersey Wage and Hour Law, and Public Policy)

109. Plaintiff, during the course of his employment, made inquiries and objected to certain payroll practices engaged in by the Defendants, its management and representatives, including, but not limited to, specifically, with regard to the Defendants' systematic failure to record and adequately and fully pay Overtime for hours worked in excess of 40 hours during a given week.

110. After Plaintiff complained, he was wrongfully terminated in retaliation for those disclosures and complaints.

111. Defendants' retaliatory conduct was in violation of the FLSA, the New Jersey Wage and Hour Law and New Jersey public policy.

112. Defendants' retaliatory conduct was also outrageous, entitling Plaintiff to punitive damages.

113. As a result of said termination, Plaintiff suffered lost income, emotional stress and anxiety and various other diverse consequential damages.

## SIXTH COUNT
## (BREACH OF THE IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING)

114. Plaintiff repeats and restates each and every allegation contained in the foregoing Paragraphs as if set forth herein.

115. Defendants owed a duty of good faith and fair dealing to all their employees, including Plaintiff.

116. Defendants' duty of good faith and fair dealing applies to implementation and enforcement of its existing policies and practices, including its policies governing termination, protection of whistleblowers, overtime, retaliation and hostile work environment.

117. As a result of Defendants' breach of their duty of good faith and fair dealing, Defendants are liable to Plaintiff for monetary and consequential damages.

118. As described above, Defendants breached this covenant and did not act in good faith nor engage in fair dealing with the Plaintiff.

119. As a result of Defendants' breach of good faith and fair dealing, Plaintiff has suffered and will continue to suffer damages to his loss and detriment.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court grant the following relief in the form of an Order:

- A. Declaring that Defendants violated the FLSA and the New Jersey State Wage and Hour Law;

- B. Declaring that Defendants' violations of the FLSA and the New Jersey State Wage and Hour Law were willful;

- C. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

- D. An award of unpaid overtime compensation due under the FLSA and the New Jersey State Wage and Hour Law;

- E. Awarding liquidated and/or punitive damages as a result of Defendants' willful failure to pay overtime compensation pursuant to 29 U.S.C. §216 and the New Jersey State Wage and Hour Law;

- F. Awarding damages for Plaintiff's claim of unpaid wages as secured by the FLSA and N.J.S.A. §34:11-56a-56a30, as well as an equal amount in liquidated damages;

- G. Awarding compensatory damages and punitive damages for violations of the Conscientious Employee Protection Act ("CEPA") N.J.S.A. § 34:19-3;

- H. Awarding prejudgment and post-judgment interest;

- I. Awarding Plaintiff costs, including expert witness expenses and reasonable attorney's fees; and

J.  Granting such further relief as the Court deems just.

Respectfully submitted,

PATRICK J. WHALEN, ESQUIRE

Dated: May 23, 2017

*s/Patrick J. Whalen*
Attorney for Plaintiff, Kevin Harrison

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues raised herein.

PATRICK J. WHALEN, ESQUIRE

*s/Patrick J. Whalen*
Attorney for Plaintiff

Dated: May 23, 2017

## CERTIFICATION UNDER LOCAL CIVIL RULE 11.2

This matter is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

PATRICK J. WHALEN, ESQUIRE

*s/Patrick J. Whalen*
Attorney for Plaintiff

Dated: May 23, 2017

## CONSENT TO SUE UNDER THE FLSA

I, KEVIN HARRISON, hereby consent to be a Plaintiff in an action under the FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201, *et seq.*, to secure any unpaid wages, overtime, and liquidated damages, attorneys' fees, costs, and other relief arising out of my employment with DEFENDANTS, and any other associated parties.

I authorize Patrick J. Whalen, Esquire, as well as any successors or assigns, to represent me in such action.

Dated: May 23, 2017

_____
KEVIN HARRISON